Defendant-appellant John S. Young appeals his conviction and sentence from the Fairfield County Court of Common Pleas on two counts of robbery in violation of R.C. 2911.02 and one count of attempted rape in violation of R.C. 2923.02. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On August 3, 1984, the Fairfield County Grand Jury indicted appellant on two counts of robbery in violation of R.C. 2911.02
and one count of attempt to commit rape in violation of R.C.2923.02. At his arraignment on August 13, 1984, appellant entered a plea of not guilty and not guilty by reason of insanity to the charges contained in the indictment. After reviewing the results of two (2) court ordered psychiatric examinations of appellant, the trial court found appellant competent to stand trial. A jury trial commenced on January 29, 1985.
The following evidence was adduced at trial.
On July 25, 1984, appellant entered a Lawson's store at approximately ten until four in the morning and encountered Pauline Sue Mossholder, an employee. Mossholder testified that appellant, after coming behind the counter, asked her for the money in the cash register and told her that he would not hurt her if she complied. After Mossholder opened the register, appellant took the money out of the same and then, according to Mossholder, started forcefully pushing her into the back of the store where a small office was located. Mossholder also testified that appellant, who stood between her and the door to the office, choked her, ripped her clothes off while telling her to suck him, pushed her onto the ground, and inserted his fingers into her vagina while she was struggling. Appellant allegedly told Mossholder before leaving that "he was going to get another store." Transcript of Proceeding, Vol. I at 94. Appellant took Mossholder's clothes with him when he left the store. Mossholder testified that, after her struggle with appellant, she had red marks around her neck and back and bruises on her lower right side. Mossholder's injuries were corroborated by medical testimony.
During the same morning, appellant also robbed a Stop and Go between 5:00 A.M. and 5:30 A.M. Pam Roop, an employee at Stop and Go, testified that after she responded to appellant's demand to open the cash register, appellant took the money in the cash register and shut her in a cooler in the back room. Roop further testified that she felt that she could not leave because appellant was between her and the way out of the store. Appellant, Roop recalled, neither displayed a weapon nor threatened to display one.
Shortly after the last robbery, appellant was picked up by the police and taken to the Stop and Go store where he was identified by Roop as the man who had robbed her. Mossholder, who was taken to the Stop and Go store by the police, also identified appellant as the man who had robbed and raped her. Appellant was then arrested. Appellant admitted to taking the money from the stores, but not the sexual assault of Mossholder.
Appellant's trial commenced on January 29, 1985. At the close of the State's case in-chief, appellant's trial counsel made a Criminal Rule 29 motion for acquittal on all three (3) charges. Such motion, which was denied by the trial court, was never renewed by appellant's counsel at the close of the evidence.
During the defense case-in-chief, psychiatrist Harold C. Brown, M.D. was called as a defense witness. Dr. Brown previously had, after conducting a competency exam, found appellant competent to stand trial. Dr. Brown testified at trial that appellant did not suffer from mental disease or defect, that appellant knew the nature of the act he was doing on July 25, 1984, and that appellant knew the difference between right and wrong on such date. Brown also read statements from his psychiatric evaluation of appellant indicating that appellant had stolen money from his mother, drank heavily and had been through alcohol treatment as part of his sentence on a previous charge of gross sexual imposition.
After hearing all of the evidence and testimony adduced at trial, the jury found appellant guilty on January 30, 1985, of all of the charges. Appellant thereafter was sentenced to prison for a period of not less than eight (8) years nor more than fifteen years on each count. The sentences were to be served consecutively to each other.
On January 29, 1998, this court granted appellant's motion for leave to file a delayed appeal.[1] It is from his conviction and sentence appellant prosecutes his appeal, raising the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, WHEN TRIAL COUNSEL CONCEDED APPELLANT'S GUILT AT TRIAL, PURSUED A BASELESS PLEA OF NOT GUILTY BY REASON OF INSANITY AND FAILED TO BRING A MOTION FOR ACQUITTAL AT THE CLOSE OF ALL EVIDENCE.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PLAIN ERROR BY SUBMITTING THE CASE TO THE JURY WHEN THE STATE FAILED TO ESTABLISH THAT FORCE WAS USED DURING ONE OF THE THEFT OFFENSES, CONTRARY TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
Any other facts relevant to our discussion of appellant's assignments of error will be contained therein.
 I
In his first assignment of error, appellant maintains that he was deprived of his right to effective assistance of trial counsel. Appellant specifically contends that his trial counsel violated such right by conceding appellant's guilt at trial, by pursuing a baseless plea of not guilty by reason of insanity and by failing to make a motion for acquittal at the close of all of the evidence.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance, Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instances of alleged ineffectiveness of counsel raised by appellant in the instant case.
Appellant argues that his trial counsel's concession of appellant's guilt at trial constitutes ineffective assistance of counsel. Appellant specifically points to the following statements made by appellant's trial counsel during his closing argument::
 "The assailant had ahold of Sue [Mossholder], walked into the area, forced her into the area, in what appeared to be the elements of robbery. There was theft and there was force." Transcript of Proceedings, Vol. II at 202.
Appellant also points to statements made by his trial counsel to the effect that Mossholder was a "classic victim" who, based on appellant's actions, had "very real fear[s]" of sexual assault and to his trial counsel's statements suggesting that Roop's testimony was credible. Transcript Vol. II at 203 207.
However, trial counsel's admissions as to the credibility of witnesses and as to appellant's guilt were simply trial strategy and do not constitute ineffective assistance of counsel. See State v. Coleman (1989), 45 Ohio St.3d 298, 308. Appellant, after his arrest, admitted that he had taken money from the stores. While appellant's trial counsel conceded that a robbery of Lawson's had occurred, he denied the second count of robbery, stating in his closing argument as follows:
 "He walks up to the clerk, in this case Pam Roop, and demands the cash register be opened and demands the cash. . She opened the register which contained the cash. What you hear are the elements of theft, but the indictment says robbery, with force or threat of force. . . . . The testimony and the evidence which is also submitted by the State, shows we could not have a robbery." (Tr., Vol. II at 203)
Trial counsel further challenged Roop's credibility, emphasizing that, prior to testifying at trial, she had never indicated that she had been threatened or felt threatened by appellant. While credible, trial counsel noted to the jury, Roop's testimony "clearly shows that he [appellant] is not guilty of robbery." Tr., Vol. II at 206.
Trial counsel further stressed that appellant's actions did not constitute a rape or attempted rape of Mossholder since, other than appellant's alleged statement to Mossholder to "suck me", "there were no other comments and no other suggestions. There were no demands, no original commands, no other orders, either sexual or otherwise." There was "never any intent to force her nor any action to force her to commit fellatio. . ." (Transcript Vol. II at 208, 212.) Clearly, any concession as to appellant's guilt or as to the credibility of witnesses constituted trial strategy, rather than ineffective assistance of counsel. Throughout his defense of appellant, appellant's trial counsel repeatedly emphasized that his client had not committed the second robbery or the sexual assault of Mossholder. It is reasonable trial strategy for trial counsel to concede that some offenses were committed and others were not. Trial counsel chose, in this case, to concede some actions by the appellant but chose to defend against the rape and the second robbery charge. There is no evidence in the record from which this court can determine that, had trial counsel not engaged in the strategy that he used, the outcome would be different.
Trial counsel, pursuant to a reasonable standard of performance, should have renewed his motion for acquittal at the close of the evidence or within fourteen days following the jury's verdict. However, appellant has failed to demonstrate that he would have been acquitted had such motion been renewed. The standard for a Criminal Rule 29 motion for acquittal is whether reasonable minds could differ as to whether or not the State has proven each material element of a crime beyond a reasonable doubt. State v. Bridgeman, (1978), 55 Ohio St.2d 261. Appellant's motion for acquittal, which was made at the close of the State's case-in-chief, had been denied by the trial court. Viewing all of the evidence we cannot conclude that there was a reasonable probability, but for trial counsel's failure to renew the motion for acquittal, the appellant would have been acquitted on any of the charges. In other words there is no evidence that appellant was prejudiced by counsel's alleged ineffectiveness in failing to renew the motion.
In his first assignment of error, appellant asserts that his trial counsel's pursuit of a baseless plea of not guilty by reason of insanity deprived him of his right to effective assistance of counsel. The crux of appellant's argument is that because of the insanity defense, psychiatric testimony was presented at trial that portrayed him as a drunk who stole from his own mother and who had committed a prior sexual assault.
Assuming, arguendo, that the first prong in Strickland, supra
is met, the court finds that appellant has not shown that he was prejudiced by counsel's ineffectiveness. There is no showing that there is a reasonable probability that but for counsel's unprofessional errors, the results or the outcome would have been different. Bradley, supra. Notwithstanding Dr. Brown's testimony, there was competent and credible testimony from both victims supporting appellant's conviction on all charges in the indictment.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues that the court committed plain error by submitting the case to the jury when the State failed to establish that force was used during one of the theft offenses.
Crim. R. 52(B) provides:
 "(B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See State v. Long
(1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226.
Appellant specifically contends that there was insufficient proof of force concerning the alleged robbery of Pam Roop. Force is defined in R.C. 2901.01(A)(1) as meaning "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing". Ohio Revised Code Section 2911.02(A)(3) indicates that someone is guilty of robbery if that person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, uses or threatens the immediate use of force against another. The "use or threat of immediate use of force against another "requirement is satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v.Davis (1983), 6 Ohio St.3d 91, 94. The Ohio Supreme Court inDavis stressed that this was an objective, not a subjective, standard.
Roop, at trial, testified that the appellant entered the store between 5:00 and 5:30 A.M., and there were no other customers in the store. Roop further testified that appellant demanded she open the cash register. Appellant took the paper money from the cash register and then made Roop go through the room in the back of the store and placed her in the cooler. (Transcript of Proceedings, pages 68-70) Roop further testified that she did not feel free to go since appellant stood between her and the exit and that she was afraid to run away for fear that appellant would catch her. There was testimony to the effect that Roop felt threatened by appellant. (Transcript of Proceedings, pg. 85) Roop also felt she had no choice but to comply (Transcript of Proceedings, pg. 74). Thus, there was sufficient testimony to support the element of force since Roop's fear was "of such a nature as in reason and common experience is likely to induce a person to part with property against [her] will and temporarily suspend [her] power to exercise [her] will by virtue of the influence of the terror impressed." In other words, Roop felt forced to comply and any reasonable person would have felt the same way. The trial court, therefore, did not err in submitting the case to the jury.
Appellant's second assignment of error is overruled.
The conviction and sentence of the Fairfield County Common Pleas Court is affirmed.
By Edwards, J., Gwin, P.J. and Hoffman, W. concur.
-----------------------------
-----------------------------
 ----------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
-----------------------------
-----------------------------
 ----------------------------- JUDGES
[1] Despite appellant's request at sentencing for court appointed counsel for purposes of appeal, the trial court had failed to appoint appellate counsel until approximately 3 months after appellant was convicted. On July 3, 1985, appellate counsel filed a Notice of Appeal and a Motion for Leave to Appeal. However, since appellate counsel did not provide the Court of Appeals with affidavits showing a probability of error, the motion was overruled. Subsequently, on January 15, 1998, appellant filed his motion for leave. The State did not oppose appellant's motion.